## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LAKINGYA TAYLOR-NORMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CV-410-TCK-FHM** |
| | ) | |
| **JOCO ASSEMBLY, f/k/a PBM** | ) | |
| **FABRICATION AND ASSEMBLY, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Amended Complaint and Brief in Support (Doc. 15). Defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

### I.  Factual Background

The following facts are contained in Plaintiff's Amended Complaint or the attachments thereto. Plaintiff is an African-American female who was hired by PBM Fabrication & Assembly ("PBM") as a window builder in August 2006. During her employment, Plaintiff suffered a racially hostile work environment and was terminated in retaliation for asserting Title VII rights. Plaintiff also suffered retaliatory treatment and was terminated in retaliation for filing a workers' compensation claim. Plaintiff received two Dismissal and Notice of Rights ("Notices") from the Equal Employment Opportunity Commission ("EEOC"), one on March 27, 2009 related to Charge 564-2008-01475 and one on July 10, 2009 related to Charge 564-2008-00143. Copied on both Notices was "JoCo Assembly formerly known as PBM Fabrication." Plaintiff subsequently brought suit against Defendant "JoCo Assembly, LLC, f/k/a PBM Fabrication and Assembly, LLC" asserting

three causes of action: (1) retaliatory termination based on filing an EEOC charge, in violation of

Title VII; (2) racially hostile work environment, in violation of Title VII; and (3) retaliatory

termination based on filing a workers' compensation claim, in violation of Oklahoma law.  The

parties agreed to stay discovery pending the Court's ruling on JoCo's motion to dismiss.

## II.     Rule 12(b)(1) Motion/Converted to Rule 56 Motion

In its motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule

12(b)(1), Defendant JoCo Assembly, LLC ("JoCo") argues that (1) Plaintiff has failed to exhaust

her administrative remedies as to JoCo because JoCo is not named as a respondent in either EEOC

charge; and (2) JoCo was not "formerly known as" PBM and is not a "successor" to PBM for

purposes of Title VII liability.  Plaintiff concedes that she did not name JoCo as the respondent in

either EEOC charge but argues that naming PBM was sufficient because JoCo is PMB's successor

for purposes of Title VII liability.  Both parties submitted evidence outside the pleadings regarding

the exhaustion issue.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one

of two forms.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  A moving

party may make a facial attack on the complaint's allegations or "may go beyond allegations

contained in the complaint and challenge the facts upon which subject matter jurisdiction is based."

*Id.*   In this case, Defendant has mounted a factual attack on whether Plaintiff exhausted

administrative remedies as to JoCo.  In reviewing a factual attack on the existence of subject matter

jurisdiction, a court ordinarily has discretion to consider affidavits and other documents or conduct

an evidentiary hearing to resolve disputed jurisdictional facts without converting the motion to one

for summary judgment.  *Stuart*, 271 F.3d at 1225.  However, "a court is required to convert a Rule

12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Con'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (internal quotations omitted). A jurisdictional question is intertwined with the merits if "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Id.* (internal quotations omitted).

In this case, resolution of the jurisdictional question (whether Plaintiff has exhausted administrative remedies as to JoCo) requires resolution of aspects of the substantive claim (whether JoCo is subject to successor liability). *See generally E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir.1974) (holding that, "in the case of successor companies," Congress "only intended that a discriminatee be required to name those who were known to him" and that Title VII's purposes are not served "by requiring an aggrieved person to charge each new successor company"). Resolving the successor liability issue is necessary to resolving the exhaustion issue, and both parties' briefs so indicate by focusing on the question of successor liability. Therefore, JoCo's Rule 12(b)(1) motion must be converted to a Rule 56 motion for summary judgment.[1]

The parties will be allowed to conduct discovery and submit supplemental briefs in accordance with the dispositive motion deadlines set by the Court, and the Court will issue a ruling on the questions of exhaustion and successor liability by future order. However, the Court finds that it is in the interest of judicial efficiency to rule now on one purely legal question raised by the

---

[1] In its reply brief, JoCo did not refute Plaintiff's argument that its Rule 12(b)(1) motion should be converted to one for summary judgment.

Rule 12(b)(1)/Rule 56 motion – namely, whether a plaintiff bears a threshold burden of showing that an alleged successor purchased assets of or merged with the alleged predecessor as a precondition to the imposition of successor liability for Title VII violations ("purchase or merger precondition"). This legal issue is ripe for consideration, and there is no need to allow discovery or additional briefing prior to ruling.

      A.    <u>General Principles of Successor Liability</u>

In the context of *corporate* liability, "[t]he general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor." *W. Tex. Refining & Dev. Co. v. Comm'r of Internal Revenue*, 68 F.2d 77, 81 (10th Cir. 1933). There are four exceptions to this rule: "(1) [w]here the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the *purchasing corporation* is merely a continuation of the selling corporations [sic]; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts." *Id.* (emphasis added). If one of these four exceptions applies, "the purchasing corporation becomes liable for the debts and liabilities of the selling corporations [sic]." *Id.*

In *Trujillo v. Longhorn Manufacturing Company, Incorporated*, 694 F.2d 221 (10th Cir. 1982), the Tenth Circuit addressed whether an alleged successor corporation could be held liable for Title VII violations committed by a predecessor corporation. The court began its analysis with the *West Texas Refining* rules set forth above. *See id.* at 224. The Tenth Circuit then affirmed the trial court's finding that the defendant was liable "as a successor employer to the corporation which employed plaintiff." *See id.* at 222-25. In so doing, the Tenth Circuit affirmed the trial court's

application of the third *West Texas Refining* exception, which applies when "a purchasing corporation is merely a continuation" of the seller. *Id.* The court rejected the defendant's argument that, in order for a purchaser to be a "continuation" of the seller, there must be a common identity of directors and stockholders and only one remaining corporation.[2] Instead of adopting a test that requires similarity of the two corporate *entities*, the court adopted a test that considers the similarity in corporate *operations*. *See id.* Specifically, the Tenth Circuit endorsed consideration of nine factors first set forth by the Sixth Circuit in *E.E.O.C. v. MacMillan Bloedel Containers, Incorporated*, 503 F.2d 1086, 1094 (6th Cir. 1974) (adopting successor liability test applied by the Supreme Court in labor law cases for use in Title VII cases). These factors are:

> 1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product.

*Id.* (quoting *MacMillan*, 503 F.2d at 1094) (emphasis added).[3]

The court noted that, in adopting the *MacMillan* factors, it was not overruling *West Texas Refining* but was merely "illuminat[ing] the factors to be weighed in analyzing [the third *West Texas Refining* exception] in the context of a Title VII case." *Id.* at 225 n.4. Indeed, courts within the

---

[2] In *Trujillo*, the first corporation remained in existence, and it had different directors and stockholders than the alleged successor corporation. *See id.* at 224. The defendant argued, therefore, that there could be no finding of continuity. *See id.*

[3] Courts have distilled these nine factors to a three-factor test consisting of the first three listed above. *See, e.g., Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986); *Walker v. Faith Techs.*, 344 F. Supp. 2d 1261, 1267 (D. Kan. 2004). The remaining six factors merely "provide a foundation for analyzing" the third factor of whether there has been a substantial continuity of business operations. *See Walker*, 344 F. Supp. at 1267.

Tenth Circuit have applied the *MacMillan*/*Trujillo* factors ("*Trujillo* factors") to determine whether a corporation can be held liable for Title VII discrimination under the third *West Texas Refining* exception.  *See, e.g., Scott v. Sopris Imports, Ltd.*, 962 F. Supp. 1356, 1358-60 (D. Colo. 1997) (granting summary judgment in favor of the defendant where the defendant (1) had no notice of the EEOC charge because it was filed after the relevant purchase agreement and the defendant had no access to the plaintiff's personnel files, (2) the predecessor could provide relief, and (3) there was no overlap in management between the defendant and prior employer).

      B.      <u>Purchase or Merger Not Precondition to Title VII Successor Liability</u>

In this case, JoCo argues that an asset purchase or merger is a precondition to Title VII successor liability and that the Court may not even reach the *Trujillo* factors unless Plaintiff first makes a threshold showing that JoCo purchased the assets of or merged with PBM.[4]  The Tenth Circuit has not decided whether there is a purchase or merger precondition to the imposition of successor liability for Title VII violations committed by a previous employer.[5]  This Court holds that there is no such precondition.  Instead, the type of transaction between the predecessor and alleged successor corporation, or the lack thereof, is simply a relevant fact for a court to consider in the overall equitable analysis guided by the *Trujillo* factors.  The Court's reasoning is two-fold: (1) *MacMillan* and subsequent Sixth Circuit decisions indicate that there is no purchase or merger

---

    [4]  JoCo's owner, Joe Kurek, has submitted evidence denying that JoCo purchased assets of or merged with PBM.

    [5]  In *Trujillo*, there existed an asset purchase agreement between the predecessor and alleged successor, but there was no discussion of whether such an agreement was a precondition to consideration of the nine factors first set forth in *MacMillan*.  As explained by one district court, "most decisions in this area of law skim over" the question of whether there is a sale, merger, or consolidation precondition to imposition of Title VII successor liability.  *See Korlin v, Chartwell Health Care, Inc.*, 128 F. Supp. 2d 609, 614 (E.D. Mo. 2001).

precondition; and (2) a rigid purchase or merger precondition hinders a court's ability to reach the most equitable decision considering the specific facts of every case.

The *MacMillan* decision, from which the *Trujillo* factors were derived, is instructive.  In *MacMillan*, the plaintiff filed EEOC charges against Flintkote Company based on race and sex discrimination at its Cleveland facility.  At some point in time, which was not apparent from the record, MacMillan, the alleged successor corporation being sued in court, took over operation of Flintkote's Cleveland facility.  *MacMillan*, 503 F.2d at 1088.  As to how MacMillan took over Flintkote's Cleveland facility, the court stated that "[t]he nature of the transaction between Flintkote and MacMillan does not appear in the record."  *Id.*  Thus, the facts were: (1) the plaintiff filed her EEOC charges against the alleged predecessor; (2) the plaintiff sued the alleged successor; and (3) there was no evidence in the record as to when the alleged successor "took over" operation of the facility or what type of transaction, if any, was entered between the alleged predecessor and alleged successor.  The trial court in MacMillan granted summary judgment in favor of MacMillan because the plaintiff failed to file EEOC charges against it.  On appeal, the EEOC argued that MacMillan was liable for any discriminatory acts of Flintkote based on the doctrine of successor liability and that refiling an EEOC charge against MacMillan was not necessary.

The Sixth Circuit reversed the trial court's judgment in favor of MacMillan. It outlined the relevant factors for the trial court to consider in deciding the successor liability question on remand and, applying such factors, reasoned:

> The affidavit established that MacMillan operated its facility at the same address as Flintkote and that MacMillan had notice of the EEOC proceedings and custody and control of all charges and related documents which had been filed against Flintkote for its Cleveland facility.   Moreover, since MacMillan and Flintkote were manufacturers of containers and Flintkote manufactured containers at its Cleveland

7

>facility, *a genuine question arises as to whether MacMillan continued Flintkote's container operation.*

*Id.* at 1094 (emphasis added). The court did not mention any transaction-based precondition, such as an asset purchase or merger, to application of the relevant factors. This is true despite the lack of record evidence regarding the nature of any transaction between MacMillan and Flintkote. If an asset purchase or merger was a necessary precondition to application of the factors on remand, it seems the Sixth Circuit would have so stated. In short, the *MacMillan* court's approach does not seem to require a particular type of business transaction between the predecessor and alleged successor. *See Holland v. New Era Coal Co.*, 179 F.3d 397, 402 (6th Cir. 1999) (explaining that plaintiffs in a case arising under the Coal Act were arguing for a "broad construction of 'successor-in-interest' that does not necessarily require a transfer of stock or assets but can rest on a substantial continuity of business operations," such as that adopted in *MacMillan* for purposes of Title VII). Because *Trujillo* adopted and endorsed the *MacMillan* approach to successor liability for discrimination by an alleged predecessor, the *MacMillan* court's failure to mention any transaction-based precondition to application of the relevant factors carries significant weight.

A more recent Sixth Circuit decision, *Cobb v. Contract Transport, Incorporated*, 452 F.3d 543, 554-56 (6th Cir. 2006), is also instructive. It held, as matter of first impression, that a "transfer of assets or a merger" is not a precondition to imposition of successor liability in the context of the Family and Medical Leave Act ("FMLA"). Although not directly on point because it arose in the FMLA context, the court discussed Title VII successor liability principles:

>The successor liability test set forth in Title VII case law [such as *MacMillan* and *Trujillo*] originates in federal labor law. *Inasmuch as federal labor cases do not require a merger or transfer of assets as a precondition to the imposition of successor liability*, we decline to impose such a requirement [under the FMLA]. . . .

8

> [T]he merger or transfer of assets is not a precondition to successor liability in the labor law (or Title VII) context.

*Id.* at 551, 554 (emphasis added).  Thus, the circuit court that set forth the *MacMillan* factors, subsequently adopted by the Tenth Circuit in *Trujillo*, expressly stated that there is no asset purchase, asset transfer, or merger precondition to application of such factors in determining successor liability under Title VII.  Seemingly, this is a conclusive statement.

However, the statement is difficult to reconcile with a later statement in the same decision. In distinguishing *Korlin v. Chartwell Health Care, Incorporated*, 128 F. Supp. 2d 609 (E.D. Mo. 2001) (requiring a merger or transfer of assets as precondition to successor liability in Title VII context because, if cost of liability was not reflected in any purchase price, imposition of successor liability would not be equitable), the Sixth Circuit stated that the "*Korlin*'s court's reasoning may be correct as applied to successor liability for *past discrimination* or unfair labor practice" but was not correct as applied to a duty to grant reasonable medical leave.  *Cobb*, 452 F.3d at 556 (emphasis added).  This weakens the Sixth Circuit's prior statement that a merger or transfer of assets is not a precondition to Title VII successor liability. Nonetheless, read as a whole, the Court construes *Cobb* as endorsing *consideration* of the existence and type of transaction between the predecessor and alleged successor in analyzing the third *MacMillan* factor in Title VII successor liability cases but as rejecting any strict purchase or merger precondition.  *See id.* (explaining that, in some Title VII cases, "consideration" of the existence of a merger or transfer of assets is appropriate) (indicating that "the manner of the purchase" is appropriately discussed in the context of the third "substantial continuity" factor); *see also Terco, Inc. v. Fed. Coal Mine Safety & Health Review Comm'n*, 839 F.2d 236, 239-40 (6th Cir. 1987) (holding, in context of Federal Mine Safety and

9

Health Act, that "[a]lthough a sale or the lack thereof is certainly one of the factors to which a court can look, it is not in and of itself determinative" of successor liability).

Second, relevant case law emphasizes that the imposition of successor liability in Title VII cases requires an equitable, case-by-case analysis that ultimately turns on fairness. *See, e.g., MacMillan*, 503 F.2d at 1090-91 (explaining that, in deciding whether to impose successor liability for unfair employment practices by a predecessor, "[w]hat is required is a balancing of the purposes of Title VII with the legitimate and often conflicting interests of the employer and the discriminatee" and that each case "must be determined on its own facts"); *see also Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 401 (3d Cir. 1999) (explaining that, in the context of employment discrimination, the doctrine of successor liability "is derived from equitable principles, and fairness is the prime consideration in application of the doctrine"). The Court finds that a strict purchase or merger precondition is not consistent with an equitable, case-by-case fairness analysis. Essentially, JoCo contends that it is never equitable to impose successor liability for discrimination of another corporation unless there has been a purchase of assets, such that the buyer has an opportunity to bargain for a lower price in light of the potential liability, or a total merger, such that the potential liability remained within the merged entity. The Court disagrees. As reasoned by the Sixth Circuit in the context of successor liability under the Federal Mine Safety and Health Act, "the lack of a sale may actually indicate that the predecessor and successor corporations are so closely linked that arms length dealings as usually occur during a sale never occur nor are they necessary." *See Terco, Inc.*, 839 F.2d at 239-40. *But see Korlin v. Chartwell Health Care, Inc.*, 128 F. Supp. 2d 609, 614 (E.D. Mo. 2001) (reaching contrary conclusion and noting *Terco* as contrary authority). Thus, while the lack of an asset purchase or merger may ultimately weigh against imposition of successor liability

in the overall fairness analysis, there is no reason to impose a strict purchase or merger precondition that disallows consideration of all equitable considerations.

In addition, the imposition of successor liability in proper cases is intended to further the remedial goals of Title VII, which are to "eradicate the present and future effects of past discrimination." *MacMillan*, 503 F.2d at 1091; *see also Trujillo*, 694 F.2d at 225 (in adopting *MacMillan* factors, explaining that legislature intended that "courts use wide discretion in exercising equitable powers with the goal of fashioning the most complete relief possible" under Title VII). The precondition proposed by JoCo in this case would hinder, rather than promote, a court's discretion to exercise its equitable powers under Title VII and could encourage successor employers to engage in evasive tactics to avoid liability. *See E.E.O.C. v. Vucitech*, 842 F.3d 936, 946 (7th Cir. 1988) (explaining that "the proper approach to the issue of successor liability is not to erect a set of hoops to force plaintiffs to jump through but to ask whether such liability would strike a reasonable balance between the interest in fully sanctioning unlawful conduct and the interest in facilitating the market in corporate and other productive assets"); *see also MacMillan*, 503 F.3d at 1093 (reasoning that requiring re-filing of EEOC charges against successor corporations "might encourage evasion through corporate transfers").

Therefore, while the existence and nature of any transaction between the alleged predecessor and alleged successor is certainly relevant to the overall balancing of the equities, the Court holds that there is no asset purchase or merger precondition to the imposition of Title VII successor liability. The parties should focus their supplemental summary judgment briefing in accordance with this legal ruling and should address any relevant transactions between PBM and JoCo in the context of the *Trujillo* factors.

11

### III.    Rule 12(b)(6) Motion

JoCo also moves to dismiss all claims pursuant to Rule 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)).  In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'"  *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).  Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*  "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.  In addition, the Tenth Circuit has stated that "the

12

degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

A.      JoCo's Employer Status Under Title VII

Relevant to the two Title VII claims, JoCo argues that Plaintiff's allegations are insufficient to establish that she was ever an employee of JoCo.  Plaintiff alleges in the caption that JoCo was formerly known as PBM.  The Court finds this sufficient to allege that JoCo is liable for actions of PBM under the doctrine of successor liability, rendering employment with JoCo unnecessary for succeeding on this claim.  Further, Plaintiff has alleged that she was directly employed by JoCo at certain relevant times.  (*See* Am. Compl. ¶ 10.)  Therefore, Plaintiff's Title VII claims are not subject to dismissal on this basis.

B.      Retaliation

JoCo argues that Plaintiff's first cause of action for retaliation must be dismissed due to lack of specificity regarding the protected activity, the adverse employment action, and causation.  This argument is wholly without merit.  The Amended Complaint alleges that Plaintiff was "terminated" in "retaliation for filing an EEOC charge" and then specifically identifies the relevant EEOC charge causing the retaliatory termination.  This is adequate to state a plausible claim for relief and apprise JoCo of the nature of Plaintiff's claim.  Therefore, Plaintiff's first cause of action is not subject to dismissal.

C.      Racially Hostile Work Environment

JoCo argues that, accepting Plaintiffs's allegations as true, they are insufficient to state a claim for a racially hostile work environment.  The Tenth Circuit has explained that the words

13

"hostile work environment" are merely a legal conclusion and that the Court's proper focus at the motion to dismiss stage are the "alleged facts supporting those words." *Moya v. Schollenbarger*, 465 F.3d 444, 457 (10th Cir. 2006) (internal quotations omitted).  Thus, the question is whether Plaintiffs' alleged facts are enough that, if assumed to be true, Plaintiff plausibly has a claim for racially hostile work environment.   Under Tenth Circuit law, such a claim requires "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of her race." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).

The Court finds that Plaintiffs' allegations are insufficient to survive the *Twombly* standard. Plaintiff has alleged that (1) she was "written up" for attendance problems while white employees engaging in the same conduct were not; (2) her supervisor drove a white injured female to a medical facility following on the on-the-job injury but forced her to drive herself to a medical facility following an on-the-job injury on one occasion; (3) another African-American employee found a "hangman's noose" in his work station and showed it to Plaintiff; and (4) the co-worker who planted the noose did so in order to watch the African-American employee "squirm" and refused to apologize.  Accepting these allegations as true, Plaintiff has not alleged any "intimidation, ridicule, or insult" of which she was the target.  The noose incident was directed at another individual. Further, there are no allegations that someone in a supervisory position participated in the noose incident or that such incident was in any way tied to Plaintiff's other allegations regarding unequal treatment.  Thus, there are no allegations that the noose incident altered the terms and conditions of Plaintiff's employment in any way.

14

As to the alleged discriminatory treatment regarding attendance and injuries, Plaintiff has not linked these incidents with any racial comments or incidents by the relevant supervisors and has failed to allege any racial motivation underlying the alleged differences in treatment. Thus, Plaintiffs' allegations, even accepting them as true and construing them in their most favorable light, fail to state a plausible claim for a racially hostile work environment. *See McGarr v. Peters*, No. CIV-07-1373, 2009 WL 3855938, at * 4 (W.D. Okla Nov. 17, 2009) (dismissing age-based hostile work environment claim because "Plaintiff fail[ed] to allege any facts to show that the alleged conduct was motivated by Plaintiff's age, an essential element of his hostile work environment claim"). Therefore, Plaintiff's second cause of action is dismissed with prejudice.

D.   Workers' Compensation Retaliation

JoCo seeks dismissal of Plaintiff's claim arising under Oklahoma worker's compensation laws on grounds that JoCo was not was not her employer at the time of the alleged retaliation, and there is no "successor liability" concept applicable to the relevant Oklahoma statute. The Court agrees with Plaintiff that her Amended Complaint alleges, however, that JoCo directly employed her during the alleged retaliation. (*See* Am. Compl. ¶ 10.) Therefore, Plaintiff's third cause of action is not subject to dismissal.

IV.   **Conclusion**

JoCo's Motion to Dismiss (Doc. 15) is GRANTED in part, DENIED in part, and HELD IN ABEYANCE in part. JoCo's motion to dismiss pursuant to Rule 12(b)(1) is hereby converted to a Rule 56 summary judgment motion and held in abeyance pending the submission of supplemental briefing in accordance with this Opinion and Order. The parties shall file supplemental briefs and evidence in support of their respective positions in accordance with the dispositive motion briefing

15

deadlines set by the Court.  JoCo's motion to dismiss pursuant to Rule 12(b)(6) is granted as to the racially hostile work environment claim and denied as to the other two claims.  The parties are ORDERED to submit a Joint Status Report no later than September 16, 2010.

SO ORDERED this 7th day of September, 2010.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**